**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| ABDIRIZACK IMAN HASSAN,<br>Petitioner,<br>vs.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | No. 26-CV-4044-CJW-KEM<br><br>**ORDER** |

---

Petitioner Abdirizack Iman Hassan's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 6). Petitioner filed a reply. (Doc. 13). For the following reasons, the Court **grants in part and denies in part** the petition, and orders that respondents provide petitioner with a bond hearing.

## *I. BACKGROUND*

Petitioner is a citizen of Somalia. (Doc. 6, at 2). On or around November 1, 2024, he entered the United States without inspection and was detained near Calexico, California. (*Id.*). However, petitioner gave notice that he intended to apply for asylum, and an asylum officer determined that petitioner had a "a credible fear of persecution . . . ." (*Id.*). He remained detained, and on December 14, 2024, petitioner was issued a Notice to Appear ("NTA") in removal proceedings. (*Id.*). However, on December 19, 2024, petitioner was granted a one-year humanitarian parole. (*Id.*). On the same day, he was released on humanitarian parole on his own recognizance. (Doc. 9-3); s*ee* 8 U.S.C. § 1182(d)(5)(A). Petitioner's release was conditioned on compliance with the ICE Alternatives to Detention Program ("ATD"), which required that petitioner report to DHS at set dates as well as remain subject to electronic monitoring. (Doc. 9-

3). During this time, petitioner also officially applied for asylum and received work authorization. (Doc. 1, at 1).

Respondents accuse petitioner of violating the terms of the ATD program at least four times. (Doc. 6, at 2). On December 2, 2025, the Department of Homeland Security ("DHS") terminated petitioner's parole and arrested him at his place of work. (*Id.*; Doc. 1, at 1). On April 28, 2026, an immigration judge denied petitioner's asylum request and ordered petitioner removed to Somalia. (*Id.* at 3; Doc. 1, at 2). On May 14, 2026, petitioner filed this instant petition for habeas corpus, along with Exhibits 2, 3, and 4. (Docs. 1, 1-2, 1-3, 1-4). On June 6, 2026, respondents Markwayne Mullin, Todd Blanche, Todd Lyons, David Easterwood and Chad Sheehan filed a response. (Doc. 6). They also provided the Court with a Declaration from Jonathon Santiago and Exhibits A and B. (Docs. 9-1, 9-2, 9-3). On June 10, 2026, petitioner filed his reply with this Court. (Doc. 13). Petitioner remains detained at Woodbury County Jail.[1]

## *II. HABEAS CORPUS LEGAL STANDARD*

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D.

[1] https://locator.ice.gov/odls/#/results

Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

## *III. HABEAS CORPUS ANALYSIS*

Petitioner argues that he has a due process liberty interest, as he was previously released from custody by the government. Therefore, petitioner requests the Court require the respondents to immediately release petitioner or grant him a pre-deprivation bond hearing. (Doc. 1, at 18). Respondents argue that when petitioner's "parole terminated, he returned to his status pre-parole, and his detention continued to be mandatory. As the Supreme Court, the Court of Appeals, and this Court have found, an alien's detention pending removal proceedings does not violate the Constitution." (Doc. 6, at 4). Furthermore, respondents state that petitioner's "detention is mandated by statute, consistent with the temporary nature of his prior parole, and consistent with due process. Accordingly, the Petition should be dismissed." (*Id.*, at 10).

The Supreme Court has held that the Due Process Clause extends to all persons present in the United States regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Thus, aliens have due process rights to life, liberty and property. U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

However, the Supreme Court has also recognized the constitutionality of detention during removal proceedings. *Carlson v. Landon*, 342 U.S. 524, 538 (1952). The Due Process Clause "affords no protection against the deprivation of liberty interests that are not constitutionally cognizable." *Sanchez-Velasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). There is one exception: "once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law." *Figueroa Lima v Sheehan*, No. 26-cv-4022-CJW-KEM, at *5 (N.D. Iowa Apr. 9, 2026). "A person's liberty is equally protected [by the due process clause], even when the liberty itself is [statutory] a creation of the State." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). This rule applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984).

Petitioner argues that when he was granted humanitarian parole into the country, he was granted a liberty interest that the government can not take away without a bond hearing. (Doc. 1, at 4). In support of this case, petitioner has cited cases from the Northern District of Iowa where it was found the petitioner did have a liberty interest. The cases include *Muse v. Mullin* (petitioner was released as part of the ATD program and committed fifteen violations before he was brought into custody), *Singh v. Mullin* (petitioner was released on bond before being detained again), and *Ermekov v. Mullin* (petitioner was released on bond before being detained again). *Muse v. Mullin*, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532 at *4-5 (N.D. Iowa Apr. 14, 2026); *Singh v. Mullin*, No. C26-56-LTS-MAR, 2026 WL 1021846 at *4 (N.D. Iowa Apr. 15, 2026); *Ermekov v. Mullin*, No. C26-41-LTS-KEM, 2026 WL 1046766, at *3 (N.D. Iowa Apr. 17, 2026).

This case is analogous to *Muse v. Mullin*, where the Court held that petitioner's request for a bond hearing should be granted on due process grounds. In *Muse*, the Court held that a petitioner acquired a liberty interest when the government released him on his own recognizance as part of the ATD program, and so holding to precedent, this Court finds that the petitioner here acquired a liberty interest when he was released on his own recognizance as part of the ATD program. *Muse*, at *1, *4; (Doc. 6, at 2). Accordingly, the Court needs to determine what due process is owed to petitioner.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine exactly the parameters of that opportunity to be heard the Court balances:

> (1) the private interest that will be affected by the official action; against
>
> (2) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and
>
> (3) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*Id.* at 335 (cleaned up).

Regarding the two interests weighed and the first factor, "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Put another way, "freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects" *Zadvydas*, 533 U.S. at 690 (cleaned up); *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025) (applying this rule to immigration detention). Regarding the second factor, "the Court considers 'whether the challenged

procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025). Last, in looking at the risk of erroneous deprivation, courts consider the costs of additional procedure "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him in 2024. Therefore, the government has arbitrarily revoked that interest by detaining him without demonstrating petitioner is dangerous or a flight risk. (Doc. 1, at 1; Doc. 11-1, at 2). Because petitioner has a strong interest in release, and the burden on the government in providing a bond hearing is relatively minimal, the *Mathews* factors favor providing petitioner a bond hearing.

## *IV. CONCLUSION*

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted in part and denied in part**. The Court **grants** petitioner's request for a bond hearing and hereby orders that within fourteen days of the date of this order respondents provide petitioner an individualized bond hearing before an immigration judge under Title 8, United States Code, Section 1226(a). The court **denies** petitioner's request for immediate release from custody.

**IT IS SO ORDERED** this 26th day of June, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa